May it please the court, David N. Chandler, for David N. Chandler, P.C. That's David N. Chandler, Sr., and that's not my given name, but I am the Sr. There is a Jr. Just for clarification. The... It's for the Chandler that's in this suit, correct? Can you hear the Chandler in this suit? No. The Chandler in this suit is technically the law corporation, David N. Chandler, P.C. Okay, but you're the Chandler who did the work? No. That's David N. Chandler, Jr. Okay. I just want to make sure you said to me that I'm the Sr., not the Jr., and I lost... Okay, so your son did the work? Yes. Okay. You're here representing, you know... I'm here representing the corporation, which is the employee. Yes. The opinion that... When I refer to Mr. Chandler, I refer to... I'm referring to Mr. Chandler, Jr. The opinion that he gave the court concerning Section 544 application was an opinion. It was a legal argument. What's the standard of review? What is the standard of review? For the... For the court's determination below that's challenged? The... It is the de novo review. It's the next question of fact and law. Does the court have discretion in connection with the denial of the fees? Yes. Absolutely. I'm going to question you more about the standard of review. The bankruptcy court found that the plaintiff had breached a duty of loyalty. Correct. That was not undertaken without hearing, right? It was an argument, yes. The plaintiff had a hearing. Yes. And the court determined there was a breach. Correct. Why is that a no-go? Because... Any district court who makes a decision on questions of fact, which underlie the decision of the court, juries, for instance, the only way I can do those is to find clearly erroneous decision-making. It seems to me this is the same, no, same review. That is correct. However, it's clearly... Well, therefore, as to the facts underlying whether the plaintiff breached, I would have to find that the district court clearly erred. It is clear error if the decision or finding is based upon erroneous application of law. And that's our position. Okay. That's different than the no-go. Well, I understand what you said. I was talking about the finding of that there was a blatant misrepresentation. Frankly, the blatant misrepresentation is the same standard. It's after the hearing. I mean, Crimson Court was the one who was sitting there in the hearing, hearing the whole thing, deciding what to do. And in my book, that's a question of fact, clearly erroneous review. If it's based upon an erroneous application. It may be erroneous because they misapply law, but it isn't a no-go. That's all I'm trying to get to, Your Honor. Thanks for that, Your Honor. Your Honor, the error of law is that Section 551 is a means of recovery under Section 522G. 522G establishes the debtor's right to exemptions after there has been a transfer preposition in a recovery by the estate. Well, let's go back. It seems to me that if we're going to find that your client breached his duty of loyalty, we've got to find was there a change in position, and then did it affect his client? Well, I'm not sure about the change in position. I'm not sure that's required. At least as to the 3-310E, I think it's required. I mean, that's the duty that he's supposed to have breached, right? No, I don't think so. I think the duty was in taking a position contrary to the interest of the Let's just talk about whether he took a position which was contrary to. In the December 11, 2013 hearing, what did he say? He said that he did not believe Section 551 applied. He said, we're not avoiding the need of trust under a rule that would require preservation for the benefit of the estate. Correct. It's avoiding for clear violation of Rule 3-300. Correct. Then he said, well, the idea is this. By virtue of 3-300 has to do with informed sin. When you make a voluntary transfer, you could then avoid it. It would typically be the benefit of the estate. But when you have a failure under 330, then you don't have a consensual transfer, because it wasn't voluntary by definition. You're not avoiding it under the bankruptcy code. You're avoiding it under the rules of professional conduct. That's what he said. That's what he said. Well, that changes his idea. Well, Your Honor. The next thing he says, oh, no, it has nothing to do with that. That has to do under the bankruptcy state is the only way it could have been avoided. Your Honor. And that was after he found out the only way he could get fees was if the money would go into the bankruptcy estate and not go directly to his former client. No, that's not how the law works. That's not how the law works. That's not how the law works. Well, Your Honor, I respectfully disagree. The Section 551 of preservation, we've got two deeds of trust we're talking about, and we're completing the two. The Kermit Welland deed of trust was a non-consensual deed of trust because 3300 obliged. The Cal FHA deed of trust, which was junior to that, was a voluntary transfer. Okay, I'll listen to you. And that is what we have said all along. The voluntary transfer is senior to the homestead exception. The involuntary transfer gets avoided, and it's not void from its concession under California law. We cited the BCJ case. It's a California case. This is avoidable transfer because of lack of consent. That's the position we were taking at that hearing. That was a hearing, a preliminary hearing, on the first draft of a plan, and it was a hypothetical discussion with the court. The court raised the issue. I read you what you said there, and I read what you say in September of 2014. The C. Smith deed of trust was avoided under Section 544 of the code. It avoided the C. Smith deed of trust was automatically preserved for the benefit of the estate under 551. It's contrary to what you said before. You may think it is contrary, but it didn't affect the plan. That's the first thing. Was it contrary to what we had? Was there a change in position? Obviously. The next question is did it affect your client? We did take a position in December. That was not before the court. It was raised by the fact. The judge asked you to get out. Will the law firmly be preserved for the benefit of the estate under 551, which includes 544? You have been validated. No. No is what you said. It hadn't been invalidated. It was hotly contested. You said not be preserved. It doesn't make any difference to the debtor. That's a different question. Does it make a difference to the debtor? We're focusing on whether you took a different position. Did your son take a different position? Seemingly. He was straightened out by the court. What does that mean? Judge Jaroslawski told him that it would be preserved, and it was a prior hearing. It was in the plan. It wasn't before the court. It was raised by the judge, and it was discussed, just like we discuss something hypothetically here. They discussed that at the trial court. He didn't think it would be preserved. In order to be a reason for the duty of loyalty, it has to be injurious to the cause. It has to cause harm or have a propensity to cause harm. I'll just finish. There we are. We're affecting the client. The client could have had the net proceeds of the Homestead exemption under the plan without a problem, and you came in, your client came in and said, no, the client doesn't get the net proceeds. The net proceeds are put into the estate and distributed pursuant to the plan. At least the time that the client would get the money is put off. That's an effect. But that is not necessarily true. We did not ask that the money be put into the estate. We asked that the money be put into the estate. They asked that in order for her to accept the money, the exemptions under 522 are taken from the estate. This interest was transferred before the estate was created. This money, these proceeds were not in the estate when the estate was created. They were recovered from the estate. Under Section 522G, she has a right to claim exemptions in the recovered proceeds, whether they're recovered by turnover of 542 or by under 551 or any other means of recovery that are set forth in Section 522. 522 prefaces the paragraph by saying, notwithstanding 551, she's entitled to take these exemptions. We had established by evidence that this transfer to Carvapala was not voluntary. If it's not voluntary, she can accept it. No problem. There is no problem. The only reason that we asked for it to be paid to the trustee was we were concerned because we thought if you ask for it to be paid to the trustee, are you suggesting to me on appeal that you stand here today that you didn't ask for it to be put in the estate? Yes. Absolutely. Just given to the trustee that was it? That says it goes to the estate? No. I disagree, Your Honor. The trustee makes disbursements to all guys. Why don't we change to discord? What's the standard of review on discord? Abuse of discretion. Your Honor, I'm not here today to argue about discord. There must have been discord. That's not an issue. So you're giving that up? Well, I'm not giving it up. I mean, are you saying, Judge, the discouragement is not anymore in front of you? Don't even worry about it? Is that what you're saying? Yes. Okay. So we're not going to talk about discouragement. The claimant, I'm going to waive the argument altogether. How about the discretion in discord and dismissing the case? We don't have a big issue. That's what the court wanted to do. We're giving that up. Because I understood that was one of the issues. The district court abused its discretion in granting the request to dismiss the case. We think the case should have been kept open. I'm not arguing about that. Because they had a hearing. After they had the hearing, the judge made the decision. You lost. We did. So I don't know what you've got here on abuse of discretion. I don't know what Guta would do. But we're not getting to the tail end of the argument. The tail end of the argument is that this 551 argument, let me advance, only applied to Cal FHA. So you want to go back to your first argument and not pick up these last two points? Well, that's important to me. I understand. That's important because we have never, ever contested or taken any steps to jeopardize the exemption. Taking the position that there's preservation under 551 on the Cal FHA needed trust. And as we've set forth in all of our motions, it is subject to 506D, a determination that is wholly unsecured. If it's wholly unsecured, that is preserved for the benefit of the estate. So that could be paid to the trustee as would the exemption. And the only reason we did that is to prevent an interplayer, which actually occurred, not for our own making, but it occurred because the order got messed up. That happens. That disobeys the fund. The only reason this money was still in the title company is Seamith was contesting everything. Everything. And they would not allow that money to go into our trustees. So we had no control over the money. When you leave the money in a title company like that, ultimately they get tired. They call you up. They get tired of holding the money. And they air plate it and they can deduct the fees under state law. That's what they in fact did way after this case was decided because, you know, someone in the court or somebody didn't get the orders to the title company right. And they air plate the funds. Just like I was afraid they would do. And that hurt the debtor. That hurt potentially the recovered amount from the Cal FHA. What the 551 is all about, the argument was all about all the way through from the inception, was preserving Cal FHA. That's what the code provides. And I'll conclude that. Thank you very much. Thank you. May I please report. My name is Paul. And I represent the chapter 13 debtor. And I'm telling in this case. Initially, I want to respond just briefly to what Mr. said, because that's not even what he said in his opening brief. On page 11 of his opening brief. He recites that. Conducted. Conducted research and concluded that there was a conflict of interest. Conflict of interest was between the pellet and my client together. He says in footnote four of page 11, quote the conflict of interest relates to disposition of funds. Appellate developed a financial interest in litigation. When fees occurred and ceased, this release of claim resulted in appellate having a large, subsecured claim. Appellate's contingent 503B claim, which is administrative fee claim is inherently adverse to appellate's exemption rights relative to sales proceeds. The conflict of interest was that my client wanted to keep her homestead. And the appellate wanted to take it from her. That was the conflict of interest. Actually, I want to say something if I can. After I submitted my opening answering brief, I realized that I had omitted and failed to articulate some extremely important facts. And the most important fact is that the Carmichaelan used the $230,000 note that Carmichaelan had was canceled, extinguished, and completely erased under the terms of the confirmed Chapter 13 plan. I didn't see this initially, but I've got to walk you through it. I give three minutes. First, on February 11th, 2014, Carmichaelan and the debtor executed a comprehensive settlement agreement. Carmichaelan had already released its deed of trust, but they still had a $230,000-plus claim in the case. So the parties executed the settlement agreement. It's on pages 273 and 275 in the record. And on paragraph 3 of the settlement agreement, on page 274, it says, mutual general release. Quote, each party agrees to release Clint with forever discharge to the other party. Any and all actions, causes of actions, claims, demands, damages, costs, loss of service, expenses, and debts whatsoever for $10,000 right on the firm. Correct. They pay $10,000, but that's not good enough for Carmichaelan because Carmichaelan is worried that someone else might come into the case and try to attack the settlement. Carmichaelan really doesn't quite want to make sure the causes of action against Carmichaelan are released. But this whole part of the package did. Scott? I'm trying to eliminate any liability questions for Clarence. The evidence is screened up to account for the full knowledge of the development of my agreement. Right there. Three weeks after, a motion is filed by Mr. Chattanooga's office to authorize the settlement. And this motion is going to take the second day of the record. But Mr. Taylor says, as part of this motion, quote, to avoid any possible question concerning the debtor's authority to execute the agreement initials internal beliefs, the Carr firm has requested that the subject agreement be included in the record and that debtor obtain an amended order that specifically references the document. The Carr firm has further requested that the amended rule 9010 order specifically provide that the agreement is binding on any subsequent Chapter 7 trustee and that it may not be modified by any subsequent Chapter 13 or Chapter 11 plan. So this motion comes out in front of the court. The court approves this amended adoption settlement agreement. And that's on document 102 of the case. The court signs the order, including compromise and controversy, and specifically approves this agreement and says that by agreement of the parties, this compromise shall be binding on any subsequent Chapter 11 trustee. Here's what I did not see. The order confirming plan. I didn't see it initially because it looked like a standard form of order to me. The standard form was adopted out of the Espinoza case, which came out of the Ninth Circuit, and I don't want to let it to the Supreme Court, but the last line of the order confirming plan, on page 269 of the record, it says and is further ordered that the amended order authorizing compromise and controversy, document number 102, is incorporated into this order and into the current Chapter 13 plan. So the Chapter 13 plan actually consists of two documents. There's part A, which is a first amendment Chapter 13 plan filed on February 12th, 2014. And now there's part B. But this is document number 102, which includes the settlement agreement completely extinguishing and canceling the debt. Why is this important? Because the Carmichaelan Data Trust was voluntarily released by Carmichael. But even if you pretend it was not released, even if you pretend that it still exists, it was preserved for the benefit of the creditors, what is always on that Data Trust? Nothing. The Data Trust secures an obligation of zero because the debt itself was canceled as part of the plan. And, Your Honor, you're on the panel that Judge Kaczynski decided that the Espinosa case of 2008, Judge Kaczynski ruled that the terms of the plan controlled their binding. It went up to the Supreme Court. The Supreme Court confirmed Judge Kaczynski and Your Honor with a twist. The twist was that the Espinosa case was a debtor, and they put an illegal plan in relation to the plan. The debtor said, I'm going to pay $13,000 on that student loan, and that payment was set so I'm a debtor of full. It was a discharge by ambush because it's supposed to do. It's an absolute seating. Someone's complaint. The student loan people objected. It went up to the Supreme Court. The Supreme Court confirmed Judge Kaczynski with a twist. The twist was that, okay, if a lawyer does that and tries to get tricky, he can be subject to rule of endless sanctions. But the Supreme Court also said that the bankruptcy court has an independent duty to examine all Chapter 13 plans to make sure that no illegal provisions were inserted into the plan. That's the reason why, I mean, this came out in 2010. The bankruptcy courts have swamped this work. Hundreds of thousands of cases are being sought out. The court in Santa Rosa simply did not have time to go through every uncontested Chapter 13 plan to find whether there were any illegal or unauthorized provisions. And that's why Judge Strasovski put in a standard form of order that any provision of a plan reporting to discouragement that it's not approved and that the proof of claim shall supersede any plan provision reporting to women or disloyalty. That's when I initially read the order. That's what I was reading. I kind of skipped it. But the last sentence there cancels the debt. There's no debt. So the entire argument, there's no debt to the firm. There's no debt to the firm. There's no debt in existence. So the idea that a deed of trust was statistically preserved and that it's only known as a deed of trust is an illusion. It's simply wrong. It's not borne out of the case. So, and again, Mr. Chandler, in his opening brief, he shifted his arguments. In his reply brief, what he is saying is that, in his opening brief and the conclusion, on page 49 of his brief, he concludes that, again, this has to do, remember, he told Governor McIntosh that we have a conflict of interest and you need to get another lawyer. And, again, that conflict of interest was that he was coming after her mom's health. He even says that in his conclusion, quote, circumstances precluded continued representation of Governor McIntosh, absent disclosure of the innate conflict between appellants' claim for fees and employees' rights relative to escrowed funds. A judge's policy is entirely correct. In his rulings, the app affirmed his opponent's close examination of the record, and I would urge the court also to affirm the decisions of both Judge Carlson and the defendant. Now, let me turn to Mr. Chandler. Mr. Chandler, will you give a minute for rebuttal? Thank you. Your Honor, the conflict of interest was not the claim against proceeds. The court did the debtor on an all-state exemption. Cal FHA had an interest in the proceeds. We believe that the Cal FHA lien was preserved for the benefit of creditors, and a 5060 is a 5060 determination was made. So we wanted to preserve that right against Cal FHA. The debtor wanted to dismiss and waive her rights under 522G, apparently, which would have made her exemption proceeds non-exempt when she walked out the door. Now, the conflict with her was simple procedural conflict. I mean, my worry about your argument is pretty simple. It seems to me that counsel has laid it out pretty specifically, as I understood the conflict as it was explained to your client. And as your client testified that it was explained to her, now you've changed the conflict. I'm just trying to understand what you now say it was. No, it's the same conflict, because the interest in administrative claim would only be paid from Cal FHA proceeds, right to proceeds. And since she had voluntarily and concisely encumbered her all-state exemption with the Cal FHA loan, the Cal FHA loan was adverse to her interest. And the problem was if somehow she lost her rights under 522G, which we didn't think she could ever do, then we would be directly at odds with her argument. Furthermore, the plan provided for recovery, a number of other recoveries which the dismissal was foreclosing, and that put us in conflict with her. And those things are just not discussed. And what really motivated this whole thing was when we were able to negotiate with Carter McClellan to zero out the claim, to zero out the claim, then that made that she would have needed a discharge. And this is the other conflict is that she would have needed a discharge to discharge Carter McClellan. Well, we knew that she couldn't get a discharge under Chapter 7. We knew that because of the bad faith arguments that Carter McClellan were able to come up with and their objections to the confirmation that we were able to resolve with Carter McClellan. So we knew that was an issue. So the conflict was it is the running out the door and a dismissal could really adversely impact her and could adversely impact her in a way that could benefit us. We weren't arguing that we got her. You have given up your discouragement of fees. You're told you're never going to get any fee and doesn't matter whether you win or lose. No, it doesn't, Your Honor. I have been in practice for 42 years. I have a stellar record with the State Bar. I have a stellar record with every court I've practiced in front of. This finding was arguing that it's a correct application of the law Judge Jaroslawski straightened my son out on 551 and how that worked. The problem was when I looked at it, it doesn't make any difference. 551, the Preservation of Karmic Law, made no difference to the mole stamp. It made no difference to the termination of Cal FHA as being preserved. It made no difference to my view. We have one minute. You can use the rest of your time. The case of McIntosh v. Chandler will be submitted, and the court will be in recess until 9 o'clock tomorrow morning. Thank you very much.
judges: Bea, N.R. Smith, Lynn